**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**KAREN M. DECKER,**

               **Plaintiff,**

**v.**

                                    **19-CV-6095-HKS**

**ANDREW SAUL, Acting**
**Commissioner of Social Security,**

               **Defendant.**

_____

**DECISION AND ORDER**

        Plaintiff, Karen M. Decker, brings this action pursuant to the Social

Security Act ("the Act") seeking review of the final decision of Acting Commissioner of

Social Security (the "Commissioner"), which denied her application for supplemental

security income ("SSI") under Title XVI the Act.  Dkt. No. 1.  This Court has jurisdiction

over this action under 42 U.S.C. § 405(g) and the parties have consented to the

disposition of this case by the undersigned pursuant to 28 U.S.C. § 636(c).  Dkt. No. 16.


        Both parties have moved for judgment on the pleadings pursuant to

Federal Rule of Civil Procedure 12(c).  Dkt. Nos. 10, 12.  For the reasons that follow,

Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 10) is GRANTED and

Defendant's Motion for Judgment on the Pleadings (Dkt. No. 12) is DENIED.

## BACKGROUND

On September 15, 2015, Plaintiff protectively filed an application for SSI with the Social Security Administration ("SSA") alleging disability beginning on February 25, 2014, due to:  Bipolar disorder, Anxiety, Scoliosis, Depression, Inflammation of the spine, possible Glaucoma, and Degenerative Disc Disease.  Tr.[1] 207-12, 222.  On December 29, 2015, Plaintiff's claims were denied by the SSA at the initial level and she requested review.  Tr. 120-25.  On, December 8, 2017, Plaintiff appeared with an attorney and testified, along with a vocational expert ("VE") before Administrative Law Judge, Andrew Soltes ("the ALJ").  Tr. 45-83.  On February 28, 2018, the ALJ issued a decision finding Plaintiff was not disabled within the meaning of the Act.  Tr. 15-25. Plaintiff timely requested review of the ALJ's decision, which the Appeals Council denied on December 7, 2018. Tr. 1-6.  Thereafter, Plaintiff commenced this action seeking review of the Commissioner's final decision.  Dkt. No. 1.

## LEGAL STANDARD

**I.   District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a

---

[1] References to "Tr." are to the administrative record in this matter.  Dkt. No. 4.

mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law."  *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.     Disability Determination

An ALJ must follow a five-step process to determine whether an individual is disabled under the Act.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  20 C.F.R. § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments.  *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work.  20 C.F.R. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to demonstrate that the claimant "retains a residual functional capacity to perform the alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience.  *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.     The ALJ's Decision

The ALJ's decision analyzed Plaintiff's claim for benefits under the process described above.  At step one, the ALJ found Plaintiff had not engaged in

substantial gainful activity since September 15, 2015, the alleged onset date.  Tr. 17.

At step two, the ALJ found Plaintiff has the following severe impairments:  Degenerative

Joint Disease, Scoliosis, Congestive Obstructive Pulmonary Disease, Depressive

Disorder, and Post-Traumatic Stress Disorder.  *Id.*  At step three, the ALJ found that

these impairments, alone or in combination, did not meet or medically equal any listings

impairment.  Tr. 17-19.

Next, the ALJ determined Plaintiff retained the RFC to perform sedentary

work[2] except she has to avoid prolonged walking, requires a sit and stand option at will

but must remain on task during the sit and stand option, can occasionally climb ramps

and stairs but never ladders, ropes, or scaffolds, and can occasionally stoop, kneel,

crouch, and crawl.  Tr. 19.  The ALJ also found that Plaintiff cannot be exposed to

unprotected heights and must avoid extreme temperatures and concentrated exposure

to dust, fumes, gasses, and other pulmonary irritants.  *Id.*  In addition, the ALJ limited

Plaintiff to a low stress work environment, defined as performing simple, routine, and

repetitive tasks making basic work-related decisions, and exposure to rare changes in

the workplace setting, with occasional interaction with the public, supervisors, and co-

worker, but no tandem or collaborative working. *Id.*  Lastly, the ALJ found Plaintiff may

be off-task up to five percent of an eight-hour workday.  *Id.*

---

[2]  "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or
carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined
as one which involves sitting, a certain amount of walking and standing is often necessary in
carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally
and other sedentary criteria are met."  20 C.F.R. 416.967(a).

At step four, the ALJ found Plaintiff has no past relevant work.  Tr. 24.  At step five the ALJ concluded, based on the VE's testimony in consideration of Plaintiff's age, education, work experience and RFC; that Plaintiff was capable of performing other work existing in significant numbers in the national economy.  *Id.*  Specifically, the ALJ found Plaintiff could perform the following jobs:  "Document Preparer;" "Grinding Machine Operator;" and "Mail Sorter."  Tr. 25.  Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act from September 15, 2015, through February 28, 2018.  *Id.*

## II.    Analysis

Plaintiff argues that remand is warranted because the ALJ erred in determining her RFC in evaluating medical opinion evidence and in relying on the VE's testimony at step five.  Dkt. No. 10 at 5, 8, 15.  The Commissioner contends that the ALJ's RFC finding is supported by substantial evidence and should be affirmed.  Dkt. No. 12 at 11.  This Court finds that the ALJ's RFC finding is not supported by substantial evidence and remand is warranted for the reasons that follow.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  An ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings."  *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted).  In other words:

> An ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may not substitute his own judgment for competent medical opinion…. This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, 2017 WL 6017931, at *12 (D. Conn. 2017) (citations omitted).  While an ALJ's conclusion need not "perfectly correspond with any of the opinion of medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."  *Ortiz*, 298 F. Supp. 3d at 586 (citing *Richardson v. Perales*, 402 U.S. 389, 399, 91 S. Ct. 1420, 28 L.Ed.2d 842 (1971) ("We therefore are presented with the not uncommon situation of conflicting medical evidence.  The trier of fact has the duty to resolve that conflict.")  Although the ALJ is free to choose between properly submitted medical opinions, he may not substitute his own lay opinion for those of medical experts.  *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998).

Plaintiff contends that the ALJ erred in evaluating medical opinion evidence by relying on his own lay opinion to determine specifically that Plaintiff may be off-task for up to five percent of an eight-hour workday and finding Plaintiff is able attend work regularly.  Dkt. No. 10 at 5.  Specifically, Plaintiff argues the ALJ failed to adequately assess the opinion of her treating physician, Paulette Lewis, M.D. ("Dr. Lewis"), in accordance with the treating physician rule.  Dkt.  No. 10 at 8-13.  The Commissioner contends that the ALJ's RFC finding regarding Plaintiff's ability to perform work on a sustained basis is supported by the opinions of Dr. Walker (a non-

examining state agency consultant) and Dr. Hartman (psychiatric consultative examiner).  Dkt. No. 12 at 11.

In January 2018, Dr. Lewis completed a questionnaire assessing functional limitations consistent with Plaintiff's chronic bilateral lumbar pain with bilateral sciatica and side effects of her prescribed medications.   Tr. 623.  Dr. Lewis noted that Plaintiff would experience pain, fatigue, diminished concentration and work pace, and would need to rest while at work; resulting in Plaintiff being off task for more than twenty percent but less than thirty-three percent during a workday.  Tr. 623.  Dr. Lewis also opined that Plaintiff would miss three workdays per month due to her condition.  Tr. 624. Lastly, Dr. Lewis opined Plaintiff could sit for four hours out of an eight hour workday; would need to change positions every thirty minutes; could stand/walk for approximately two hours; and could safely lift over ten pounds frequently (up to two thirds of the day). Tr. 624.

The ALJ acknowledged Dr. Lewis as Plaintiff's treating provider and accorded the opinion "partial weight," explaining that he agreed with the doctor's assessed limitations for sitting, standing, and walking because they are supported by the evidence of record.  Tr. 24.  However, the ALJ noted that the doctor did not define the amount of time contained in being off task more than twenty percent but less than thirty-three percent of the workday.  *Id.*

Under Second Circuit precedent and the applicable Social Security Regulations, an ALJ must follow a two-step procedure in evaluating the medical opinion of a treating physician. *See Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). First, the ALJ determines whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." *Id.* If these criteria are satisfied, then the opinion is "entitled to controlling weight." *Id.* If not, then the ALJ proceeds to the second step, determining "how much weight, if any, to give" the opinion. *Id.* Specifically, at step two the ALJ must consider the following factors: "(1)the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Id.* at 95-96 (citing *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir.2013) (per curiam) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir.2008) (citing 20 C.F.R. § 404.1527(c)(2)))). The ALJ must provide "good reasons" regarding the weight assigned to a treating physician's medical opinion at both steps. *Id.* at 96. (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir.2004) (per curiam) (quoting 20 C.F.R. § 404.1527(c)(2))). "We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion." *Halloran*, 362 F.3d at 33.

The ALJ noted that Dr. Lewis has been treating Plaintiff for lumbar degenerative disc disease, since March 2013 and most recently completed a medical questionnaire on her behalf in January 2018. Tr. 20-21. The ALJ incorporated a

general summary of Plaintiff's treatment with Dr. Lewis for chronic lower back pain.  Tr. 20.  The ALJ concluded that Dr. Lewis did not "define" the amount of time contained in being off task more than twenty percent but less than thirty-three percent of the workday.  Tr. 24.  Here, the ALJ erred in failing to adequately explain his reasons for the less than controlling weight given to the opinion of Dr. Lewis and created a gap in the record regarding the amount of time Plaintiff would be off task during a workday.  The ALJ relied upon his own lay opinion in determining Plaintiff may be off task for up to five percent of a workday.

It is unclear what further "definition" the ALJ was seeking from the doctor regarding her assessment that Plaintiff would be off task for at least twenty percent of the day.  There are eight hours in a workday or 480 minutes, therefore, twenty percent of the workday amounts to 96 minutes off-task.  This mathematical computation certainly could have been made by the ALJ or ascertained by re-contacting the treating physician for clarity.  Instead, the ALJ impermissibly substituted his own judgment and concluded Plaintiff may be off task for up to five percent of a workday.  In doing so, the ALJ also disregarded Plaintiff's treating social worker who also opined that Plaintiff would suffer interruptions due to her conditions, amounting to at least twenty percent time off task.  Tr. 606.  Notably, the ALJ's finding also conflicts with the VE's testimony during the administrative hearing—which the ALJ elected not to discuss in his decision.  Tr. 24-25. (discussing the VE's testimony).

Specifically, the ALJ asked the VE the following question:

"If we were to change the time off-task to each of the hypotheticals from five percent and change it to between fifteen and twenty percent of an eight-hour workday, would that change your responses to the hypotheticals?"  Tr. 78.

The VE responded:

"Yes, your honor.  These jobs would not be able to be performed given the routine nature of this particular work and the production demands that would be expected."  Tr. 78.

The VE further clarified that in production settings, the time off-task is typically limited to that associated with routine breaks and a lunch period.  In non-production settings any time off-task less than eighteen percent of the workday is acceptable for the simplest of jobs, given it is a reduction in work speed and not time away from the workstation.  Tr. 79.

The ALJ made absolutely no observation regarding the consistency of the treating physician's opinion with the remaining medical evidence, even though Johanna Webster, LMSW, Dr. Hartman, and Dr. Walker also assessed limitations in Plaintiff's ability to maintain a regular schedule and perform at a consistent pace.

For example, Ms. Webster completed a Mental Functioning Questionnaire on Plaintiff's behalf in November 2017, indicating she treated Plaintiff since May 2017. Tr. 605-7.  The social worker listed post-traumatic stress psychological symptoms, severe generalized anxiety, mild depression, and panic disorder as the diagnoses upon which she evaluated Plaintiff's ability to mentally function.  Tr. 607.  Ms. Webster referenced Plaintiff's Psychiatric Evaluation by Richard Dziennik, Psychiatric NP, from the same date in November 2017, regarding Plaintiff's medications and medication side

11

effects.  Tr. 608-11.  She opined Plaintiff would have Medium ("The approximate of loss would be more than 20% for the particular activity but less than 1/3 of the day. (33%)." Tr. 606.) limitations with: completing a normal workday and work week without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; and in her ability to appropriately respond to ordinary stressors in a work place setting with simple tasks.  *Id.* Ms. Webster also opined Plaintiff would miss three days or more of work per month due to her mental impairments and side effects from her prescribed medications.  Tr. 607.

In according "little weight" to Ms. Webster's opinion, the ALJ explained that the social worker was a treating—but not acceptable—medical source and did not provide support for "extreme absenteeism."  Tr. 24.  In addition to acceptable medical opinions, an ALJ may also consider the opinions of "other sources"—such as therapists—but is "free to discount" such opinions "in favor of the objective findings of other medical doctors."  *Genier v. Astrue*, 298 F. App'x 105, 108-198 (2d Cir. 2008) (summary order).  However, an ALJ should adequately explain why he rejected an opinion from such a source if it is significantly more favorable to the plaintiff and may well "have an effect on the outcome of the case."  20 C.F.R. § 404.1527(f).

Here, this Court finds that the ALJ's conclusory rejection of Ms. Webster's opinion is inadequate.  First, the ALJ failed to address the limitations Ms. Webster assessed regarding Plaintiff's reduced ability to perform at a consistent pace, without an unreasonable number and length of rest periods. Second, the ALJ dismissed her opined

level of absenteeism as "extreme" without further explanation or reference to the record. Here, this Court notes that the ALJ also entirely ignored the treating physician's opinion that reflected the same amount of absenteeism (three days per month).  This error is not harmless where the VE testified that eight to twelve unexcused absences in a twelve-month period consistently would result in termination.  Tr. 80.  As with the VE's testimony regarding time spent off-task, similarly the ALJ omitted the VE's testimony regarding unexcused absences in his decision.  Tr. 24-25. (discussing the VE's testimony).

Dr. Walker also found Plaintiff would be moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and in her ability to perform at a consistent pace without an unreasonable number and length of rest periods.  Tr. 116.  Dr. Walker reviewed Plaintiff's claim at the initial level in December 2015 and assessed the following Mental RFC ("MRFC") for Plaintiff.  Tr. 115-117.   The doctor concluded that while evidence in the file supported the presence of a severe psychiatric impairment that results in significant functional limitations, Plaintiff retained the MRFC to understand and remember routine instructions and work procedures.  Tr. 117.  She could also maintain adequate attention and concentration to complete work like procedures and could sustain a routine.  *Id.*  She would be able to respond to social interaction in an appropriate manner and can adapt to basic changes and make routine work like decisions.  *Id.*  In according this opinion "partial weight," the ALJ noted that the opinion was rendered before the new regulations for evaluating mental conditions became

13

effective in January 2017.  Tr. 24.  The ALJ explained that, in consideration of the new

regulations, he concluded that Plaintiff has moderate limitations for understanding,

remembering, and applying information; moderate limitations in interacting with others

and in concentration, persistence, or maintaining pace; and moderate limitations for

adaptation and self-management.  *Id.*

Dr. Hartman also observed Plaintiff has mild difficulties in maintaining

attention and concentration and mild to moderate difficulties in maintaining a regular

schedule.  Tr. 512.  Dr. Hartman performed a psychiatric consultative examination of

Plaintiff in December 2015.  Tr. 509-515.  He diagnosed Plaintiff with unspecified bipolar

disorder, posttraumatic stress disorder with panic attacks, and made a notation "rule out

learning disorder."  Tr. 511-12.  In according this opinion "great weight," the ALJ

concluded simply that the mental restrictions assessed by Dr. Hartman are supported

by evidence of record.  Tr. 24.   The Second Circuit Court of Appeals has warned that

ALJs should not rely heavily on the findings of consultative physicians after a single

examination, especially in the context of mental illness where a one-time snapshot of a

claimant may not be indicative of her longitudinal mental health.  *Estrella v. Berryhill*,

925 F. 3d 90, 98 (2d Cir. 2019).

Notably, both Dr. Hartman and Dr. Walker specifically assessed Plaintiff's

limitations in consideration of only her severe psychiatric impairments and medications

in 2015, while Dr. Lewis (who treated Plaintiff for five years) assessed limitations in

consideration of her physical condition (chronic bilateral lumbar pain) and side effects

14

from her medications in 2018.  Both Dr. Hartman and Dr. Walker's opinions are consistent with the more specific limitations assessed by Dr. Lewis and Ms. Webster.

Accordingly, this Court finds that remand is warranted for the ALJ to reconsider Dr. Lewis' opinion in accordance with the treating physician rule and adequately explain his reasons for affording the opinion less than controlling weight. *See Morgan v. Colvin*, 592 F. App'x 49, 50 (2d Cir. 2015) (finding the ALJ's conclusory explanation for rejecting the treating physician's opinion did not fulfill his obligation to provide good reasons for according less than controlling weight to the opinion). Plaintiff's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis must be properly addressed by the ALJ.

## CONCLUSION

For these reasons, Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 10) is GRANTED.  Defendant's Motion for Judgment on the Pleadings (Dkt. No. 12) is DENIED.  The Clerk of Court shall enter judgment and close this case.

**SO ORDERED.**

DATED:      Buffalo, New York
            September 11, 2020

                              *S/ H. Kenneth Schroeder, Jr.*
                              **H. KENNETH SCHROEDER, JR.**
                              **United States Magistrate Judge**

15